194 So.2d 80

Voncile G. TAYLOR et al.

v.

Claude M. JONES.

1 Div. 301.

Supreme Court of Alabama.

Jan. 12, 1967.

Fred Blanton and Morel Montgomery, Birmingham, for appellants.

Adams, Gillmore & Adams, Grove Hill, for appellee.

LAWSON, Justice.

Voncile G. Taylor and her husband, Albert J. Taylor, have appealed from a final decree of the Circuit Court of Clarke County, in Equity.

They also seek to appeal from the decree denying their application for rehearing. But that decree is not appealable for the reason that it did not modify the final decree. Equity Rule 62, Code 1940, Title 7, Appendix; Mize v. Mize, 273 Ala. 369, 141 So.2d 200. Nor is such a decree subject to review on assignments of error on appeal from the final decree. Long v. O'Mary, 270 Ala. 99, 116 So.2d 563; Whitman v. Whitman, 253 Ala. 643, 46 So.2d 422.

Walter Fox owned approximately fifty-six acres of land in Clarke County. On February 17, 1958, he and his wife, Rebecca, executed a mortgage to Jackson Bank & Trust Company, hereinafter referred to as the Bank, for $629 to secure an indebtedness of that amount, which indebtedness was evidenced by a promissory note signed by Walter and Rebecca. The debt so secured was set up on the books of the Bank as the debt of Walter Fox.

On October 13, 1959, Walter Fox executed a warranty deed to his wife, Rebecca, purporting to convey to her an undivided one-half interest in the fifty-six acre tract which had been mortgaged to the Bank. This deed contained no reference to the Bank's mortgage.

Walter Fox died testate on June 9, 1960. Under his will, which was duly probated, he devised to his wife, Rebecca, "a home on my estate until her decease." The rest, residue and remainder of his estate was devised to Voncile G. Taylor and her husband, Albert J. Taylor, who will be referred to sometimes hereinafter as the Taylors.

Voncile is apparently the daughter of Walter Fox by a previous marriage.

On October 28, 1960, Rebecca Fox conveyed her undivided one-half interest in the fifty-six acres to Claude M. Jones by warranty deed, in which no reference was made to the Bank's mortgage.

On October 31, 1960, Jones paid to the Bank the sum of $529.50, which was the amount owed by Walter and Rebecca Fox at that time. Upon such payment being made, the Bank delivered the Fox note and mortgage to Jones. The Bank did not execute a written assignment of the Fox indebtedness or the Fox note and mortgage.

On June 27, 1961, an attorney in fact for the Bank cancelled the Fox mortgage on the mortgage records in the Probate Office of Clarke County. This was done on the authority of the Bank's president, who was unaware that the mortgage had been delivered to Jones.

In December, 1961, Voncile Taylor was informed that Jones had purchased the mortgage and efforts were made to get the Taylors to contribute their portion of the indebtedness, but they did not do so. Voncile Taylor at one time agreed to sell her interest in the fifty-six acres to Jones but she later refused to go through with the sale.

On June 29, 1963, Jones obtained from the Bank a written assignment of the Fox indebtedness to the Bank, the note evidencing the indebtedness, and the mortgage securing the indebtedness.

On July 19, 1963, there was recorded in the Probate Office of Clarke County an instrument executed by Jones on July 16, 1963, wherein he purported to formally release and discharge from the lien of said mortgage the said undivided one-half interest which he (Jones) purchased from Rebecca Fox under and by virtue of the deed dated October 28, 1960.

On July 16, 1963, Jones advertised the Fox mortgage for foreclosure on the undivided one-half interest which he did not already own, the interest which the Taylors inherited under the will of Walter Fox.

After the foreclosure proceeding was commenced, Jones learned that the Bank has cancelled the mortgage, hence on September 5, 1963, Jones instituted this proceeding by filing his bill in the Circuit Court of Clarke County, in Equity, against the Bank, the Taylors and Rebecca Fox.

Aside from the prayers for process and for taxation of costs, the bill prayed:

"1. That your Honor make and enter an order holding the aforesaid cancellation by the Jackson Bank & Trust Company of said mortgage recorded in Record Book 398, at Page 407, to be null and void and authorizing and directing the Register of this Court to make a notation on the record of said mortgage to the effect that said cancellation is null and void and that the same is expunged from the record of said mortgage.

"2. That your complainant be authorized to foreclose said mortgage in accordance with its terms as to the undivided one-half interest which Walter Fox owned at the time of his decease in the 56 acres described and conveyed by said mortgage [mortgaged property described].

"3. That your complainant be authorized and directed upon the foreclosure of said mortgage, pursuant to the terms of said mortgage, to execute a deed to the purchaser of the above described property, free from all right, title and claim of the parties respondent hereto, except such statutory rights of redemption as they may have."

The respondent Rebecca Fox and the respondent Bank filed separate answers wherein all of the allegations of the bill were admitted.

The other respondents, the Taylors, interposed a demurrer to the bill, which was overruled. Thereupon the Taylors filed their answer, which they made a cross bill.

Jones and the Bank were made cross-respondents.

The material allegations of the answer-cross bill are:

1. That there is and was no indebtedness as averred in the bill of complaint.

2. That Jones, the Bank and the Bank's attorney conspired to deprive the Taylors of their title to the subject property.

3. That no claim on account of the Fox indebtedness was filed with the Executrix, Voncile G. Taylor.

The Taylors in their cross bill pray for the following specific relief:

" * * * that a final decree and order will be made by this Court denying all relief to the complainant Claude M. Jones in each and every aspect concerning his prayer for relief but that cross complainants be decreed as owners of said undivided one/half interest in the realty set out and described in the original bill of complaint, that there is no indebtedness thereon but said realty is free from all encumbrance and that the said Claude M. Jones be required by the decree to deliver to cross complainants the original mortgage he claims to own and have in his possession together with the original note held by him or cross respondent bank and that the court further decree that the cancellation of said mortgage was a valid, true and correct cancellation and all indebtednesses against said realty have been paid. Cross complainants further pray that this court in its decree will order cross respondents to compensate cross complainants in a reasonable sum for the expense in obtaining solicitor to represent them in this inequitable and illegal charge and complaint against them and that all costs be taxed against cross respondents. * * * Cross Complainants offer to do Equity."

Separate demurrers of the Bank and Jones to the cross bill were overruled. Jones answered the cross bill, as did the Bank, but the latter's answer was stricken on motion of the Taylors, the cross complainants. The Bank then filed another answer. The cause was then at issue as Rebecca Fox was not made a cross respondent.

Testimony was taken orally before the trial court on August 25, 1964. Thereafter, on December 2, 1964, the trial court rendered a decree on the merits wherein, after finding that the complainant was entitled to the relief prayed for, ordered, adjudged and decreed as follows:

"1. That the cancellation by the Jackson Bank & Trust Company of the Walter Fox mortgage recorded in Book 398 at Page 407 is null and void, and the Register of this Court is hereby directed to make a notation on the record of said mortgage to the effect that said cancellation is null and void and that the same is expunged from the records of said mortgage.

"2. That the complainant is authorized to foreclose said mortgage, in accordance with its terms, as to the undivided one-half interest which Walter Fox owned at the time of his decease in the fifty-six acres described and conveyed by said mortgage, and more fully and particularly described as follows, to-wit:

\* \* \* \* \* \*

"3. That the complainant is authorized and directed, upon the foreclosure of said mortgage pursuant to the terms of said mortgage, to execute a deed to the purchaser of the above described property, free from all right, title and claim of the parties respondent hereto, except such statutory rights of redemption as they may have.

"4. That the relief prayed for by the respondents and cross-complainants, Von-

cile G. Taylor and Albert J. Taylor is, hereby denied. * * *"

The Taylors on December 22, 1964, filed their petition for rehearing, wherein they sought to have the court ascertain the amount due and owing on the mortgage. As we have shown above, the petition for rehearing was denied. This appeal followed.

The appellants, the Taylors, argue their assignment of error to the effect that the trial court erred in overruling the demurrer which they interposed to the bill of complaint.

We will treat only those grounds of the demurrer which are argued in appellants' brief. Cook v. Whitehead, 255 Ala. 401, 51 So.2d 886; Vinson v. Vinson, 256 Ala. 259, 54 So.2d 509; Creel v. Yeager, 274 Ala. 304, 148 So.2d 635.

The first ground of demurrer argued is ground 3, which is to the effect that the complaint lacks equity. The only argument advanced in support of this ground is that the bill of complaint alleges that the indebtedness secured by the mortgage remains "unpaid and undischarged," it being contended that it should have been alleged that the mortgage is "past due and unpaid."

The Taylors' demurrer was addressed to "the complaint heretofore filed in said cause and to each count thereof or paragraph contained in said complaint from the first to the last thereof inclusive and including the prayer of said bill of complaint from the first paragraph or count thereof to the last, each count or paragraph separately and severally, and for demurrer do say: * * *." The demurrer being so addressed was, in effect, to the bill as a whole. First National Bank of Birmingham v. Bonner, 243 Ala. 597, 11 So.2d 348; Thompson v. Hanna, 262 Ala. 467, 80 So.2d 267; Potts v. Water Works Board, City of Aliceville, 267 Ala. 46, 100 So.2d 16.

Consequently, if the bill contains equity in any of its aspects, then the trial court is to be sustained. Potts v. Water Works Board, City of Aliceville, supra; Aniton v. Robinson, 273 Ala. 76, 134 So.2d 764; Madison v. Ware, 277 Ala. 408, 171 So.2d 117.

If a mortgage has been satisfied of record by mistake, a court of equity has jurisdiction to order the cancellation expunged from the record and to order the mortgage reinstated where such relief will not prejudice the rights of third or innocent persons. Adler v. Interstate Trust & Banking Co., 166 Miss. 215, 146 So. 107, 87 A.L.R. 347; Bruce v. Bonney, 12 Gray (Mass.) 107; United States v. 168.8 Acres of Land, D.C., 35 F.Supp. 724; 3 Pomeroy's Eq. Jur., § 871c, p. 399; 59 C.J.S. Mortgages § 282, p. 348; 41 C.J., Mortgages, § 993, p. 822; 36 Am.Jur., § 508, p. 939. See also Lacey v. Pearce, 191 Ala. 258, 68 So. 46; Burns v. Burns, 228 Ala. 61, 152 So. 48; Application of Joseph Ditta, Sup., 221 N.Y.S.2d 34.

Since the bill contains equity insofar as it seeks to have the cancellation of the mortgage expunged from the mortgage record, the trial court did not err in overruling ground 3 of the demurrer, which was addressed to the bill as a whole.

Moreover, we entertain the view that ground 3 of the demurrer was not well taken as to the aspect of the bill seeking authorization to forecolse the mortgage in view of the averments of paragraph 14 of the bill.

The only other ground of their demurrer which the appellants mention in their brief is ground 2, which reads:

"There is a misjoinder of parties defendant in said bill of complaint in that said bill of complaint fails to state how or in what manner Albert J. Taylor is or should be party defendant or what association he has with this cause other than that as set out in paragraph 13 wherein it is alleged Albert J. Taylor was joint devisee but fails to aver in what the estate consisted of."

The only mention made of ground 2 of the demurrer in appellants' brief reads: " * * * ground 2 clearly points out that the interest of Albert J. Taylor is not shown, and since foreclosure is sought it is submitted this information should be supplied in the bill of complaint." Treating the words just quoted as constituting sufficient argument of ground 2 of the demurrer, we hold the argument to be without merit. There is nothing in ground 2 relating to the interest of Albert J. Taylor. But even if such an objection was properly raised in ground 2 of the demurrer, it is without merit. The ground of demurrer itself concedes that Albert J. Taylor was a joint devisee, obviously a joint devisee with his wife, Voncile G. Taylor. The bill states, in substance, that Albert J. Taylor has an interest in the land; that his interest is in all of the rest, residue and remainder of the Walter Fox estate.

Moreover, the appellants' brief does not contend that ground 2, directed to the bill as a whole, was good as to the aspect of the bill seeking to have the cancellation of the mortgage expunged from the mortgage record.

Finding no merit in the argued grounds of demurrer, we hold that appellants' assignment of error to the effect that the trial court erred in overruling their demurrer to the bill of complaint is without merit.

The other assignments of error argued in brief of appellants, the Taylors, take the point that the trial court erred in entering a final decree in favor of the complainant and against the respondents.

As we understand the pleadings, the issues presented to the trial court were:

1. Did Walter Fox and wife, Rebecca Fox, execute the mortgage of February 17, 1958, to the Bank?

2. Was an indebtedness secured by this mortgage unpaid and undischarged at the death of Walter Fox and was that in- debtedness past due, unpaid and undischarged at the time of the filing of the complaint by Jones?

3. Did Jones on October 31, 1960, purchase this mortgage and indebtedness from the Bank for the sum of $529.50?

4. Did the Bank by mistake and inadvertence cancel the mortgage on the record on June 27, 1961?

5. Was Jones entitled to have this cancellation expunged?

6. Or, on the contrary, was there no indebtedness secured by the mortgage and was the transfer to Jones by the Bank the result of a conspiracy on the part of Jones, Rebecca Fox, the Bank and its attorney to defraud the Taylors?

As heretofore indicated, the trial court resolved all of these issues in favor of the appellee Jones, the complainant below.

The appellants, the Taylors, do not treat the evidence as it relates to the several issues. They do say, however, that this court should consider "the actions of this complainant, and others with him, as to whether or not these actions bar any recovery because of the equity doctrine of 'clean hands.' " We understand from the language just quoted from appellants' brief that they are saying, in effect, that the trial court should have resolved issue No. 6 in their favor, in that the evidence shows that the transfer of the mortgage by the Bank to Jones was the result of a conspiracy on the part of Jones, Rebecca Fox, the Bank and its attorney to defraud the appellants, the Taylors.

We will refrain from discussing the evidence in detail as it bears on this factual question, as it would add nothing to the established law nor serve any useful purpose. § 66, Title 13, Code 1940; Gamble v. Moore, 278 Ala. 104, 176 So.2d 35, and cases cited.

We think it sufficient to say that all of the evidence is to the effect that

Jones purchased the mortgage from the Bank. In fact, the following appears in appellants' brief: "On the 31st day of October, 1960, the said Claude M. Jones did purchase from Jackson Bank & Trust Company the aforesaid mortgage." And the evidence clearly supports a finding that the debt secured by the mortgage was due, unpaid and undischarged down to the time of and through the trial. The appellants do not question the fact that the mortgage was cancelled by the Bank and the evidence fully supports a finding that the cancellation was by mistake. The transaction whereby the mortgage was sold to Jones was handled by Granade, a vice-president of the Bank. He made no entry on the books of the Bank or on the ledger sheet of Walter Fox indicating that Jones had purchased the mortgage, although such an entry was usually, but not always, made on the ledger sheet. It was Nichols, the President of the Bank, who authorized the cancellation. He had no knowledge of the fact that Granade on behalf of the Bank had sold and delivered the Fox mortgage and note to Jones.

The appellants' insistence that there was a conspiracy to defraud the Taylors is based in the main on the fact that the Bank's attorney, who carried out instructions from the Bank's president to have the cancellation placed on the mortgage record, wrote a letter or letters to the Taylors or one of them at the request of Rebecca Fox and Jones wherein Jones offered to buy the undivided one-half interest owned by the Taylors. The Taylors also place some importance on the similarity of the pleadings filed by the Bank, Jones and Rebecca Fox.

■ As shown above, the testimony was taken orally before the trial court and, hence, the court's findings of fact are given the weight of a jury's verdict, not to be disturbed unless plainly or palpably wrong. Farmers & Ginners Cotton Oil Company v. Hogan, 267 Ala. 248, 100 So.2d 761.

We cannot say that the trial court erred in not finding that the transfer of the mortgage by the Bank to Jones was the result of a conspiracy to defraud the Taylors.

■ Appellants and appellees apparently construe the decree of the trial court as holding that in order for appellants to prevent foreclosure of the mortgage or to become the purchasers at a mortgage foreclosure sale, they must pay to Jones the sum of approximately $700, the amount which Jones claims is due on the mortgage assigned to him by the Bank.

We do not so construe the decree. It simply directs the Register "to make a notation on the record of said mortgage to the effect that said cancellation is null and void and that the same is expunged from the records of said mortgage" and authorizes the complainant to foreclose the mortgage "as to the undivided one-half interest which Walter Fox owned at the time of his decease in the fifty-six acres described and conveyed by said mortgage, * * *." The decree does not purport to determine the amount due on the mortgage nor does it provide that Jones, a co-tenant with the Taylors, by the simple device of placing an instrument on record, wherein he purported to release from the mortgage the undivided one-half interest which he had purchased from Rebecca Fox, has placed on his co-tenants the burden of paying the entire mortgage indebtedness. Those matters were not within the issue raised by the pleadings.

In Gilb et al. v. O'Neill et al., 225 Ala. 92, 142 So. 397, 85 A.L.R. 1526, we quoted approvingly from 38 Cyc. 40. A part of that quotation reads:

"* * * But one tenant in common will not be permitted to inequitably acquire title to the common property, solely for *his own* benefit or to the exclusion of his co-tenants, the general rule being that the purchase or extinguishment of an outstanding title to, encumbrance upon, or claim against the common prop-

erty by one tenant in common inures to the benefit of all the co-owners, who may within a reasonable time elect to avail themselves of the benefit of the purchase of the outstanding interest or conflicting claim or the removal of the encumbrance from the common property."

But a co-tenant, to avail himself of the benefits of such purchase, must contribute or offer to contribute to the expense thereof within a reasonable time. Williams v. Massie, 212 Ala. 389, 102 So. 611.

As we view the pleadings and evidence, the Taylors had not up to the time of the trial below offered to participate. Up until the final decree was rendered they continually insisted that the mortgage was satisfied and cancelled and that the mortgage debt had been paid by Jones at the request of Rebecca Fox.

In the state of the record before us, we cannot interpret the final decree here under review as adjudicating that the Taylors had lost their right to participate by laches or otherwise.

The decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.